### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IBRAHIM BURIAH<br>3728 New Hampshire Ave, N.W., Apt. 303<br>Washington, D.C. 20010<br><br>       Plaintiff<br>   vs.<br><br>WYNDHAM HOTELS AND RESORTS<br>a/k/a WYNDHAM INTERNATIONAL, INC.<br>a/k/a/ WYNDHAM HOTELS CORPORATION<br>1950 Stemmons Freeway, Suite 6001<br>Dallas, TX 75207<br><br>       Defendant. | Case No. |

## COMPLAINT

Plaintiff Ibrahim Buriah ("Plaintiff"), by and through his undersigned counsel, brings this action pursuant to 42 U.S.C. § 1981 ("Section 1981") and the District of Columbia Human Rights Act ("DCHRA"), and for his Complaint state as follows:

### Parties

1.     Plaintiff Ibrahim Buriah ("Buriah") is a 47-year old male African-American native of West Africa (Sierra Leon), residing at 3728 New Hampshire Ave, N.W., Apt. 303, Washington, D.C. 20010.  Buriah was employed by Defendant Wyndham Hotels and Resorts a/k/a/ Wyndham International, Inc. a/k/a/ Wyndham Hotel Corporation ("Defendant" or "Wyndham") as a server/waiter in the Veranda Restaurant at the Hotel from April 19, 2001 through April 28, 2005.  By virtue of his employment with Defendant, Buriah was at all relevant times an "employee" within the meaning of the DCHRA.  Buriah was a model employee, with no prior history of disciplinary action, from the inception of his employment at the Hotel through

the termination of his employment with Defendant. Buriah's last performance review, in October 2004, indicated that he was an excellent employee who was meeting and/or exceeding expectations.

2.  Defendant is organized under the laws of Delaware with its corporate headquarters located at 1950 Stemmons Freeway, Suite 6001, Dallas, Texas 75207. Defendant does business in the District of Columbia by virtue of its ownership and operation of the Wyndham Washington, D.C. hotel located at 1400 M. Street, N.W., Washington, D.C., 20005. Defendant also does business in the District of Columbia by virtue of its ownership and operation of the Wyndham City Center hotel located at 1143 New Hampshire Avenue, N.W., Washington, D.C., 20037. Defendant is, and was at all relevant times, an "employer" within the meaning of the DCHRA. Defendant is, and was at all relevant times, engaged in an industry affecting commerce and had fifteen or more employees for each working day in all calendar years since at least 2000.

3.  Plaintiff brings this action for injunctive relief and damages and to secure protection of and to redress the deprivation of rights secured by Section 1981 and the DCHRA.

## Jurisdiction and Venue

4.  This Court has jurisdiction over Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-5(f)(3), inasmuch as this is the judicial district in which: (1) the unlawful employment practices herein described are alleged to have been committed; (2) the employment records relevant to such practices are maintained and administered; (3) the Plaintiff would have worked but for the employment practices of Defendant; and (4) the Defendant has offices. This Court has supplemental jurisdiction over Plaintiff's state law claims brought under the DCHRA pursuant to 28 U.S.C. § 1367(a) and § 2-1403.16 of the District of

Columbia Code, inasmuch as the state law claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), inasmuch as (a) a substantial part of the events or omissions giving rise to Plaintiff's claims arose in this District, (b) Defendant may be found in this District, and (c) Defendant is subject to personal jurisdiction in this District.

### **General Allegations**

6. As set forth below, Defendant has engaged in a pattern and practice of acts that have discriminated against Plaintiff in employment opportunities on account of his race, color, national origin and ethnic characteristics associated with his national origin. As further set forth below, Defendant has also applied several of its policies against Plaintiff in a disparate manner based upon his race, color, national origin and ethnic characteristics associated with his national origin. As a result, Defendant's policies and practices have resulted in not only the disparate treatment of Plaintiff, but they have also had a disparate impact on African-American employees in general.

7. On April 26, 2005, Buriah was suspended from work at the Hotel for allegedly "misusing coupons." Buriah was instructed not to come to work for the next two days. Buriah was also instructed to appear for work on the third day to meet with Emily, the Hotel's Human Resources Director. When Buriah returned to work on or around April 28, 2005, he was instructed to meet with Emily, who informed Buriah that he was being terminated effective immediately. Buriah was not given an opportunity to explain and/or defend his alleged actions. Defendant intentionally discriminated against Buriah by terminating his employment on the basis

of his race, color, national origin and ethnic traits associated with his national origin. Other employees outside of Buriah's protected classifications were not suspended or terminated for committed the same alleged infraction.

8. The position that Plaintiff held, and was fully qualified to hold, at the Hotel either (a) was filled by equally or less qualified individuals not of Plaintiff's protected classes, or (b) remains vacant.

9. According to the "Wyndham International Employee Handbook" Defendant purports to maintain a disciplinary policy "which calls for corrective actions before more serious forms of discipline become necessary" in which "[c]orrective counseling will generally consist of progressive steps of verbal counseling and written disciplinary warnings."

10. As noted above, Defendant failed to take any corrective actions – such as verbal counseling and/or written disciplinary warnings – before suspending and then terminating Plaintiff's employment with the Hotel. Defendant's suspension and termination of Plaintiff, therefore, was in direct contravention of Defendant's own disciplinary policy.

11. Due to its actions noted above, Defendant has intentionally applied its disciplinary policies to Plaintiff in a disparate manner based upon Plaintiff's race, color, national origin and ethnic traits associated with his national origin. In the past, Defendant has followed the aforementioned disciplinary policy with respect to other non-black employees, and employees of national origins different from those of Plaintiff, who have been charged with similar, or more serious, infractions. Defendant has allowed these other employees to return to work after allegedly committing similar infractions, including non-black employees who allegedly committed the same infraction.

12. The actions of Defendant noted above are part of an overall environment at the Hotel that favors non-black employees over black employees. For example, Plaintiff and other black employees of the Hotel often were forced to work at least fourteen days in a row without a day off. These same employees also were not permitted to use sick leave and/or were discouraged from using sick leave with threatened of reprisals. Indeed, in spite of Plaintiff's numerous commendations for exemplary performance, Plaintiff's supervisor – the Hotel's Director of Food and Beverage Management ("David") – previously attempted to terminate Plaintiff's employment because Plaintiff had used two sick days over a period of 18 months. David also discriminated against black employees, and Plaintiff specifically, by giving scheduling preference to white employees with less seniority than Plaintiff.

13. As a result of Defendant's terminations of Plaintiff, and as a result of the hiring and firing practices of the Hotel (via its food and beverage director "David"), there are no African-American employees working at the Veranda Restaurant at the Hotel (other than one or two "managerial employees"). Defendant's hiring and firing practices, therefore, have had a disparate impact on African-American employees, former employees and applicants.

14. The racial composition of Defendant's managerial staff at the Hotel is further evidence of Defendant's discriminatory practices. Although there are at least thirty managerial employees at the hotel, there are only five African-American managerial employees at the Hotel. This racial discrepancy is proof that Defendant's policies have a disparate impact on African-American applicants, employees and ex-employees – especially given the fact that African-Americans account for well over fifty (50) percent of the residents of the District of Columbia is

15. The Hotel's lunch policy is further evidence of the Hotel's disparate treatment of black employees. Specifically, the Hotel's management employees – the vast majority of whom

are Caucasian – are permitted to take lunch breaks prior to the Hotel's rank-and-file employees. The effect of this policy is that lower-level employees – many of whom are African-American – such as Plaintiffs, are forced to eat lunch later in the day than most Caucasian employees and are presented with fewer lunch selections in the Hotel's employee cafeteria. Moreover, the Hotel's employee cafeteria has few, if any, selections on the weekends, when the vast majority of workers are non-Caucasian, non-managerial employees.

### Count I (Violation of 29 U.S.C. 1981)

16. Plaintiff incorporate and reallege paragraphs 1 through 15 of the Complaint as if fully set forth herein.

17. By virtue of Defendant's actions, Plaintiff was subjected to intentional discrimination and denied the benefits and privileges of employment solely because of their race, color, and ethnic characteristics associated with their national origin in violation of 29 U.S.C. § 1981.

18. As a direct and proximate result of said intentional acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment and damage to his reputations.

WHEREFORE, Plaintiff demand judgment against Defendant:

(a) requiring Defendant to reinstate Plaintiff to his positions of equal duties and responsibilities as Plaintiff would have received but for the discriminatory conduct;

(b) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct;

(c) awarding Plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(d) awarding Plaintiff compensatory and punitive damages;

(e) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(f) ordering any other legal and equitable relief this Court deems to be just and appropriate.

### Count II (Violation of the D.C. Human Rights Act)

19. Plaintiffs incorporate and reallege paragraphs 1 through 18 of the Complaint as if fully set forty herein.

20. By virtue of Defendant's intentional actions and the discriminatory impact of employment policies, Plaintiff was discharged or otherwise discriminated against with respect to his compensation, terms, conditions and/or privileges of employment on the basis of his race, color and national origin in violation of § 2-1402.11(a)(1) and (b) of Subchapter II of the DCHRA (Title 2, Chapter 14 of the District of Columbia Code).

21. As a direct and proximate result of said intentional acts, Plaintiff has suffered and continue to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment and damage to his reputation.

22. Defendant's employment practices and hostile work environment noted above have had a disparate impact on African-American applicants, employees and ex-employees.

WHEREFORE, Plaintiff demands judgment against Defendant:

(a) requiring Defendant to reinstate Plaintiff to his position of equal duties and responsibilities as Plaintiff would have received but for the discriminatory conduct;

(b) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct;

(c) awarding Plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(d) awarding Plaintiff compensatory and punitive damages;

(e) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(f) ordering any other legal and equitable relief this Court deems to be just and appropriate.

## Jury Demand

Plaintiff demands a trial by jury.

Dated: June 7, 2005                                  Respectfully submitted,

_____/s/_____
Jason H. Ehrenberg (D.C. # 469077)
jhe@becounsel.com
James C. Bailey (D.C. # 462391)
jcb@becounsel.com
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
(202) 465-2927

**Attorneys for Plaintiff**